1  Timothy J. Malloy (*pro hac vice*)
      tmalloy@mcandrews-ip.com
2  David D. Headrick (*pro hac vice*)
      dheadrick@mcandrews-ip.com
3  Scott P. McBride (*pro hac vice*)
      smcbride@mcandrews-ip.com
4  Wilhelm L. Rao (*pro hac vice*)
      wrao@mcandrews-ip.com
5  McAndrews, Held & Malloy, Ltd.
   500 West Madison Street, 34th Floor
6  Chicago, Illinois 60661
   Telephone:  312.775.8000
7  Facsimile:   312.775.8100

8  Mark P. Wine (SBN 189897)
      mwine@orrick.com
9  Orrick, Herrington & Sutcliffe LLP
   2050 Main Street, Suite 1100
10 Irvine, California 92614-8255
   Telephone:  949.567.6700
11 Facsimile:   949.567.6710

12 *Attorneys for Plaintiffs and Counter-defendants*
   *CareFusion 303, Inc.*

13

14            UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
15                  WESTERN DIVISION

16 CAREFUSION 303, INC.                    | Case No:  8:11-cv-01264 PA (ANx)

17          Plaintiff and Counter-           **CAREFUSION'S OPENING BRIEF
            defendant,                       ON CLAIM CONSTRUCTION**

18

19    v.

20 B. BRAUN MEDICAL, INC.                    Honorable Percy Anderson

21          Defendant and
            Counterclaimant.                 Discovery Cutoff:      June 25, 2012
22                                           Final Pretrial Conf.:  July 20, 2012
                                             Trial Date:            Sept. 18, 2012

23

24

25

26

27

28

## Table of Contents

I.      INTRODUCTION ............................................................................................. 1

II.     THE TECHNOLOGY OF THE PATENTS IN SUIT ...................................... 1

        A.    Needle-free, Luer Access Intravenous Connector Technology ................. 1

        B.    The '418 Patent ...................................................................................... 2

        C.    The '816 Patent ...................................................................................... 2

III.    PRINCIPLES OF CLAIM CONSTRUCTION ................................................ 3

        A.    The Claims ............................................................................................ 3

        B.    Intrinsic and Extrinsic Evidence ........................................................... 3

IV.     ARGUMENT .................................................................................................. 4

        A.    Most Significant Disputed Claim Constructions of the '418 Patent ........... 4

              1.    "plug" ......................................................................................... 4

              2.    "minimum displacement of fluid" ................................................. 5

              3.    "relatively small movement of fluid" ............................................ 7

              4.    "internal chamber" ...................................................................... 8

              5.    "substantially compensates for" ................................................... 9

        B.    Most Significant Disputed Claim Constructions of the '816 Patent ......... 11

              1.    "off-axis" .................................................................................. 11

              2.    "second axis" ............................................................................ 12

              3.    "fluid flow path is displaced from the axis of the housing" .......... 15

              4.    "fluid channel being non-concentric with the axis of the
                    housing" ................................................................................... 16

              5.    "open the channel substantially along only one side of the
                    housing" ................................................................................... 17

        C.    Other Disputed Claim Constructions of the '418 Patent .......................... 18

              1.    "moved . . . into a portion of the air chamber" ............................ 18

              2.    "generally planar" ..................................................................... 19

              3.    "non-perpendicular relationship" and "slanted relationship" ......... 20

        D.    Other Disputed Claim Constructions of the '816 Patent .......................... 21

i

1             1.     "shaft" ........................................................................... 21

2      E.     The Preambles of the '816 Patent Only Are Properly Limiting .............. 22

3             1.     The '816 patent preambles are limiting ......................... 23

4             1.     The '418 patent preambles are non-limiting.................................. 25

5   V.     CONCLUSION.................................................................................. 25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Table of Authorities

**Cases**

*Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*,
    340 F.3d 1298, 67 U.S.P.Q.2d 1865 (Fed. Cir. 2003) ...............................................19

*Baxa v. McGaw Inc.*,
    981 F. Supp. 1348 (D. Colo. 1997), *aff'd sub nom. Baxa Corp. v.*
    *Excelsior Med. Corp.*, 185 F.3d 883 (Fed. Cir. 1999) (unpublished) ......................25

*Bristol-Myers Squibb Co. v. Ben Venue Labs, Inc.*,
    246 F.2d 1368 (Fed. Cir. 2001) ....................................................................................22

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002) ...................................................................22, 23, 25

*Cisco Sys., Inc. v. Teleconference Sys., LLC*,
    2011 WL 5913972 (N.D. Cal. Nov 28, 2011) ....................................................passim

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    469 F.3d 1005 (Fed. Cir. 2006) .............................................................................21, 22

*Douglas Dynamics, LLC v. Buys Prods. Co.*,
    2010 WL 744253 (W.D. Wisc. Mar. 2, 2010) ...........................................................19

*Edwards Lifesciences LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009) .......................................................................................5

*Exxon Res. & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001) ...........................................................................6, 8, 19

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) ..............................................................................passim

*IMS Tech., Inc. v. Haas Automation, Inc.*,
    206 F.3d 1422 (Fed. Cir. 2000) ....................................................................................22

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
    381 F.3d 1111 (Fed. Cir. 2004) .................................................................................7, 8

iii

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*,

  887 F.2d 1050 (Fed. Cir. 1989) ................................................................3

*Johnson Worldwide Assocs. v. Zebco Corp.*,

  175 F.3d 985 (Fed. Cir. 1999) ..........................................................passim

*Markman v. Westview Instruments, Inc.*,

  52 F.3d 967 (Fed. Cir. 1995), *aff'd.* 517 U.S. 370 (1996)........................4

*Medegen MMS, Inc. v. ICU Medical, Inc.*,

  2008 WL 4949919 (Fed. Cir. Nov. 20, 2008) ..........................................4

*Medegen MMS, Inc. v. ICU Medical, Inc.*,

  No. SA CV 06-619 MRP (ANx) (June 21, 2007) .............................5, 7, 8

*Microsoft Corp. v. i4i Ltd. P'Ship*,

  131 S. Ct. 2238 (2011)..............................................................................6

*NTP, Inc. v. Research in Motion, Ltd.*,

  418 F.3d 1282 (Fed. Cir. 2005) ..............................................................24

*Phillips v. AWH Corp.*,

  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................................3, 4

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,

  182 F.3d 1298 (Fed. Cir. 1999) ..............................................................24

*Rapoport v. Dement*,

  254 F.3d 1053 (Fed. Cir. 2001) ..............................................................24

*Schoell v. Regal Marine Indus., Inc.*

  247 F.3d 1202 (Fed. Cir. 2001) ..............................................................20

*Solomon v. Kimberly-Clark Corp.*,

  216 F.3d 1372 (Fed. Cir. 2000) ................................................................4

*Thorner v. Sony Computer Entm't Am. LLC*,

  699 F.3d 1362 (Fed. Cir. 2012) ....................................................3, 16, 17

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,

  520 U.S. 17, 117 S. Ct. 1117 (1997).....................................................7, 8

*Young v. Lumenis, Inc.*,

    492 F.3d 1336 (Fed. Cir. 2007) ............................................................................6, 19

**Statutes**

35 U.S.C. § 112 ...................................................................................................passim

35 U.S.C. § 282 ...................................................................................................6

**Other Authorities**

*Am. Heritage Dict. of The English Language* (3d. ed. 1992) ..................................passim

*Webster's II New Riverside Univ. Dict.* (1994) ....................................................passim

## I.      INTRODUCTION

CareFusion has provided simple, meaningful constructions but only where necessary.

By contrast, Braun's constructions assert numerous claim term disputes, frequently doing no more than adding surplus language to the claim terms rather than construing them.  Braun proposes a construction inconsistent with the Federal Circuit's prior construction of the same term, "plug."  Braun proposed brand new constructions on the day the Joint Statement was due to be filed – frequently contradicting its and its experts' prior constructions, even where the parties had previously agreed.  Braun adds assertions of indefiniteness not previously presented, including where Braun or another Court had previously construed the claim term, apparently in an attempt to circumvent the Court order striking its four prior summary judgment motions.  What remains of Braun's proposed constructions is improper criticism of CareFusion's reliance on the plain and ordinary meaning of claim terms where construction is not required.  Courts have routinely found such reliance appropriate, including for the '418 patent-in-suit.  Finally, Braun attempts to argue, for the first time and contrary to the general rule, that the preambles of the '418 patent are limiting, in an attempt to support its invalidity positions, with no support for doing so in the record.

As discussed below, CareFusion requests that the Court adopt its proposed constructions and positions set forth herein.

## II.      THE TECHNOLOGY OF THE PATENTS IN SUIT

### A.      Needle-free, Luer Access Intravenous Connector Technology

Needle-free connectors or valves were developed to eliminate the use of needles in delivering medication to patients through intravenous ("IV") administration.  Devices requiring the use of needles are costly and dangerous due to the risk of accidental needle sticks.  (*See* McBride Decl. Ex. 1, '418 Patent Col. 1 ll. 22-25.)  Valves that can be accessed with a standard male Luer actuator alleviate this concern.  One problem associated with needle-free valves is fluid displacement when a male

Luer is inserted or removed from the valve.  (*See id.* at Col. 1 ll. 60-Col. 2 ll. 8.)
Retrograde flow occurs when the male Luer is removed from the valve and can cause
blood to be drawn back into the catheter.  (*See id.*)  The blood can clot or occlude the
catheter, making operation of the valve difficult or requiring catheter replacement.
(*See id.* at Col. 1 ll. 40-45.)   Another problem associated with needle-free valves is the
difficulty of designing needle-free valve access combined with the potential for
bacterial infection when the external surface of the valve is not flat.  This creates a
reservoir or cavity on which bacteria may develop that cannot easily be swabbed clean.
(*See* Ex. 2, '816 Patent at Col. 1 ll. 54-63.)

B.     The '418 Patent

The '418 patent relates to needle-free valves that resolve problems associated
with fluid displacement with needle-free valves that
produce positive displacement or are self-flushing upon
removal of the male Luer actuator.  (*See* Ex. 1, '418
Patent at Col. 7 ll. 6-12.)  Figure 3 is an embodiment of a
needle-free valve of the inventions of the '418 patent in
an inactivated state (i.e., before an actuator has been
inserted).

C.     The '816 Patent

The '816 patent relates to Luer access needle-free valves that resolve, for
example, problems associated with bacterial infection
resulting from non-flat external surfaces.  (*See* Ex. 2, '816
patent at Col. 1 l. 66-Col. 2 l. 8.)  Figure 5 is an embodiment
of the inventions of the '816 patent where these problems are
solved by having a flat proximal surface on a valve element
that cants or buckles when activated (i.e., when a male Luer
actuator is inserted).



2

## III.   PRINCIPLES OF CLAIM CONSTRUCTION

### A.   The Claims

Patent claims, appearing at the end of a patent, define the inventions. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *Thorner v. Sony Computer Entm't  Am. LLC*, 699 F.3d 1362, 1367 (Fed. Cir. 2012) ("It is the claims that define the metes and bounds of the patentee's invention.").  "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner*, 699 F.3d at 1365.  It is improper to add additional limitations or re-write the claim terms. *Id.* at 1366 ("We do not read limitations from the specification into claims; we do not redefine words.");  *Johnson Worldwide Assocs, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("General descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone.").

### B.   Intrinsic and Extrinsic Evidence

The language of the claims, the patent specification, and the prosecution history are the primary sources to consider when construing claims, and together are called "intrinsic" evidence. *Phillips*, 415 F.3d 1303, 1314-1317.  First, courts look to the words of the claims to determine the scope of the patented invention. *Id* at 1314.  The court may examine both asserted and non-asserted claims to define the scope of the patented invention. *Id.*  "[T]he context in which a terms is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314.  Second, the patent specification is reviewed to determine whether claim terms have been used in a manner inconsistent with their ordinary meaning. *Id.* at 1315.  However, it is improper to narrow the scope of a claim by importing limitations from the specification that are absent from the claim. *Id.* at 1323; *see also Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989).  The final step in evaluating the "intrinsic" evidence is to

1    review the prosecution history to understand how the Patent Office and the Applicant

2    understood the claim language.  *Phillips*, 415 F.3d at 1317.

3        Extrinsic evidence "consists of all evidence external to the patent and

4    prosecution history, including expert and inventor testimony, dictionaries, and learned

5    treatises."  *Phillips*, 415 F.3d at 1317.  It should not be used "for the purpose of

6    varying or contradicting the terms of the claims."  *Markman v. Westview Instruments,*

7    *Inc.,* 52 F.3d 967, 981 (Fed. Cir. 1995), *aff'd*. 517 U.S. 370 (1996).  Extrinsic evidence

8    may, however, sometimes help to identify the ordinary meaning of claim terms.

9    *Phillips*, 415 F.3d at 1318-19.  However, "[i]t is particularly inappropriate to consider

10   inventor testimony obtained in the context of litigation in assessing validity under

11   section 112, paragraph 2, in view of the absence of probative value of such testimony."

12   *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377-80 (Fed. Cir. 2000).

13   **IV.    ARGUMENT**

14       **A.    Most Significant Disputed Claim Constructions of the '418 Patent**

15           **1.    "plug"**

| CareFusion's Proposed Construction (and the Federal Circuit's construction) | Braun's Proposed Construction |
|---|---|
| "a member moveable between an open and closed position."<br><br>*See Medegen MMS, Inc. v. ICU Medical, Inc.*, 2008 WL 4949919, at **5 (Fed. Cir. Nov. 20, 2008). | "a member moveable between an open and closed position, wherein the 'member' is the entire valve element (i.e., the proximal and distal portions) including any collapsible skirt portion." |

        The term "plug," which appears in independent claims 27 and 68, was

previously construed by the Federal Circuit in *Medegen MMS, Inc. v. ICU Medical,*

*Inc.* ("*Medegen II*") as "a member moveable between an open and closed position."

2008 WL 4949919, at *5 (Fed. Cir. Nov. 20, 2008).  CareFusion has proposed exactly

the same construction.  Prior to June 13, the only construction of "plug" Braun had

proposed was the Federal Circuit's construction.  Braun's expert applied this

construction.  (*See* McBride Decl. Ex. 3, Kytomaa 5/21/12 Report at 67.)  On June 13,

however, Braun proposed a different construction, which is not a "construction" at all.

4

1   Instead, Braun improperly changes the Federal Circuit decision and construes

2   "member," a term that does not even appear in the claims.  *See  Edwards Lifesciences*

3   *LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009) ("[W]e do not ordinarily

4   construe words that are not in claims.").  Thus, at the eleventh hour, Braun attempts to

5   re-write the claims to create an unnecessary dispute where the term has already been

6   construed (in an agreed-upon manner) sufficiently to assist the finder of fact.

7   **2.      "minimum displacement of fluid"**

| CareFusion's Proposed Construction | Braun's Prior Construction | Braun's Current Construction |
|---|---|---|
| "zero or as close to zero as possible of fluid displaced in or out of the valve outlet port when the actuator is moved into or out of the valve inlet port." | Same as CareFusion's. (*See* Ex. 4, Braun's response to Interrogatory No. 3 at 19; Ex. 3, Kytomaa 5/21/12 Report at 66.) | This claim is indefinite under 35 U.S.C. § 112 and thus incapable of construction. If the Court finds this claim definite, "an amount of displacement of fluid." |

14      The term "minimum displacement of fluid" appears only in independent claim

15   68.  "[M]inimum fluid displacement" appears only in the preambles of claims 31 and

16   32.  These are non-limiting, and thus do not require construction.  (*See infra* § E.2.)

17   The construction now advocated by CareFusion was previously adopted by District

18   Judge Pfaelzer.  (*See* Ex. 5 at 25, *Medegen MMS, Inc. v. ICU Medical, Inc.*, No. SA

19   CV 06-619 MRP (ANx) (June 21, 2007) (Docket No. 108, Claim Construction Order).

20   Earlier in this lawsuit, Braun adopted this construction, (Ex. 4, Braun's response to

21   Interrogatory No. 3 at 19; Ex. 3, Kytomaa 5/21/12 Report at 66), and also argued that

22   "CareFusion 303 is collaterally estopped from arguing for a different claim

23   construction . . . ."  (Ex. 6, Braun's Invalidity Contentions at 33 n.14.)  Now, Braun

24   offers a new construction.

25      CareFusion's proposed construction takes into account the context in which the

26   terms are used in the claims.  (*See* Ex. 1, at Claim 68 (reciting "a minimum

27   displacement of fluid through the valve outlet port into the self-flushing connector"

28   when the actuator is moved into the inlet port and "a minimum displacement of fluid

5

1    through the valve outlet port out of the self-flushing connector" when the actuator is

2    moved out of the inlet port).)  The specification recognizes that many factors affect the

3    amount of fluid displacement.  (*See id.* at col. 2 ll. 12-15 (explaining that fluid

4    displacement can "vary substantially, based upon device design, materials, and the

5    tolerances allowed for both male and female Luers . . . .  [A] minimum fluid

6    displacement medical connector . . . would attenuate or completely alleviate many of

7    the problems associated with prior art medical connectors").)  CareFusion's proposed

8    construction (which comports with Judge Pfaelzer's construction) should be adopted.

9          Braun's June 13 construction should not be adopted.  It is inconsistent with

10    Braun's prior positions in this lawsuit.  Braun now asserts that "minimum

11    displacement of fluid" is indefinite, despite that Braun and its expert previously

12    provided a construction, without asserting that the claim was indefinite, and its experts

13    applied the same to the accused products and the alleged prior art. (*See* Ex. 4, Braun's

14    Response to Interrogatory No. 3 at 19; Ex. 3, Kytomaa 5/21/12 Report at 47-48, 66;

15    Ex. 12, Layton 4/30/12 Report at 47-48.)

16          Further, patents enjoy a statutory presumption of validity and can be proven

17    invalid only by clear and convincing evidence.  *See* 35 U.S.C. § 282; *Microsoft Corp.

18    v. i4i Ltd. P'Ship*, 131 S. Ct. 2238 (2011).  A patent claim is sufficiently definite (and

19    not invalid) if "one skilled in the art would understand the bounds of the claim when

20    read in light of the specification."  *Exxon Research & Eng'g Co. v. United States*, 265

21    F.3d 1371, 1375 (Fed. Cir. 2001).  A term is only indefinite where it is "insolubly

22    ambiguous" or "not amenable to construction."  *See Young v. Lumenis, Inc.*, 492 F.3d

23    1336, 1346 (Fed. Cir. 2007) (internal quotation omitted); *see also Exxon*, 265 F.3d at

24    1375 ("[I]f the meaning of the claim is discernible, even though the task may be

25    formidable and the conclusion may be one over which reasonable persons will

26    disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness

27    grounds.").  The term "minimum displacement of fluid" of the '418 patent is not

28    indefinite because, among other things, its meaning can be determined.  Indeed, it was

1    construed in a prior lawsuit and construed by Braun and its expert in this lawsuit.  (*See*

2    *e.g.*, Ex. 5, *Medegen I* Claim Construction Order at 25.)

3         The prior construction proposed by Braun and applied by Dr. Kytomaa was

4    **identical** to the construction that has been consistently proposed by CareFusion.

5    Moreover, the construction currently proposed by Braun as an alternative to

6    indefiniteness reads out the term "minimum" and is thus improper.  *See Warner-*

7    *Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S. Ct. 1117, 1040

8    (1997) ("Each element contained in a patent claim is deemed material to the scope of

9    the patented invention[.]"); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,

10   381 F.3d 1111, 1119 (Fed. Cir. 2004) (rejecting defendant's claim construction that

11   would have read the word "operatively" out of "operatively connected").

12             **3.     "relatively small movement of fluid"**

| CareFusion's Proposed Construction | Braun's Prior Construction | Braun's Current Construction |
|---|---|---|
| "a volume greater than zero and less than or approximately equal to the volume of the actuator tip." | Indefinite under 35 U.S.C. § 112; alternatively, "a volume greater than zero and approximately equal to the volume of the actuator tip." <br><br> (*See* Ex. 4, Braun's response to Interrogatory No. 3 at 19; Ex. 3, Kytomaa 5/21/12 Report at 65.) | This claim is indefinite under 35 U.S.C. § 112 and thus incapable of construction. <br><br> If the Court finds this claim definite, B. Braun suggests "an amount of displacement of fluid." |

20        Independent claims 27 and 28 recite a "relatively small movement of fluid" and

21   relate that volume of fluid to insertion and removal of the actuator.  (*See* Ex. 1, at

22   Claims 27 and 28 ("movement of the actuator . . . resulting in a relatively small

23   movement of fluid").)  The specification states that "[t]he volume of fluid displaced

24   during actuation in a case where a male Luer nozzle is used as the actuator, will often

25   be approximately equal to the volume of the male Luer nozzle penetrating into the

26   connector when coupled."  (Ex. 1, '418 Patent at col. 2 ll. 9-12.)

27        Braun's argument that "relatively small movement of fluid" is indefinite is

28   without merit given that a prior court was able to construe "relatively small movement

of fluid" (albeit stating that its construction of "a volume greater than zero and
approximately equal to the volume of the actuator tip" was subject to "[f]urther
refinement . . . in future proceedings") and Braun's expert was able to apply that
construction in his infringement analysis.  (*See* Ex. 5, *Medegen I* Claim Construction
Order at 26-28; Ex. 3, Kytomaa 5/21/12 Report at 65); *see also Exxon*, 265 F.3d at
1375.  CareFusion's refinement of the prior court's construction is warranted because
it resolves the redundancy of limiting the term to both "greater than zero" and
"approximately equal to the volume of the actuator tip," which volume is always
greater than zero.

Braun's alternative construction also fails not only because it is inconsistent
with Braun's prior positions, but also because it reads out "relatively small."  *See
Warner-Jenkinson*, 117 S. Ct. 1117, 1040 (1997) ("Each element contained in a patent
claim is deemed material to the scope of the patented invention[.]"); *Innova/Pure
Water,* 381 F.3d at 1119 (rejecting defendant's claim construction that would have
read the word "operatively" out of "operatively connected").

### 4.      "internal chamber"

| CareFusion's Proposed Construction | Braun's Prior Construction | Braun's Current Construction |
|---|---|---|
| "the volume inside of the valve that is in contact with the fluid." | "internal portion of the housing situated in between the valve throat and the valve base."<br><br>(*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 60.) | "internal portion of the housing in between and not including the valve throat and the valve base." |

The phrase "internal chamber" is recited in independent claims 17, 27, 31, 32,
and 68.  CareFusion's proposed construction is supported by the intrinsic evidence.
For example, the summary of the invention explains that the internal chamber is
"adapted for receiving an actuator."  (Ex. 1, '418 patent at col. 2 ll. 41-42; *see also id.*
at claims 17, 27, 31, and 32 (referring to a displacement of fluid resulting from
insertion or removal of the actuator into or out of the valve internal chamber).)   The

8

'418 patent also teaches that the housing is comprised of a valve base and a valve cap that together form an internal chamber. (*Id.* at col. 5 ll. 18-19.)  The dictionary definitions of "internal" provide additional support for CareFusion. (*See* Ex. 8, *Webster's II New Riverside Univ. Dict.*, 637 (1994) ("Of, relating to, or situated within the limits or surface of something . . . ."); Ex. 9, *Am. Heritage Dict. of The English Language*, 942 (3d. ed. 1992) ("Of, relating to, or located within the limits or surface; inner . . .").)

Braun's construction is inconsistent with its prior construction and was not applied by its non-infringement expert.[1]  Moreover, Braun's construction improperly limits the boundaries of the internal chamber and contradicts both the intrinsic evidence and the dictionary definitions of "internal" discussed above.  *See Johnson*, 175 F.3d at 989 ("[M]odifiers will not be added to broad terms standing alone.").

**5.    "substantially compensates for"**

| CareFusion's Proposed Construction | Braun's Prior Construction | Braun's Current Construction |
|---|---|---|
| Plain and ordinary meaning.  No construction is required. | Indefinite under 35 U.S.C. § 112; alternatively, "is equal to." <br><br>(*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 62.) | "is equal to, such that the net displacement is zero." |

The phrase "substantially compensates for," which appears twice in Claim 17, should be given its plain and ordinary meaning.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010) (affirming the district court's claim construction where some claim terms were given their "ordinary meaning"); *see also Cisco Sys., Inc. v. Teleconference Sys., LLC*, 2011 WL 5913972, at *5 (N.D. Cal. Nov 28, 2011) ("[T]he Court also agrees that this meaning [of 'access point'] is clear upon

---

[1] (*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 60.)

a reading of the Claims and that, therefore, it does not require construction.").  This term is a straightforward phrase that can be understood by a person of ordinary skill in the art and/or a layman alike and needs no further construction.  This is fully supported by the intrinsic evidence.  (*See* Ex. 1, '418 patent at claim 17, col. 6 ll. 31-39, col. 7 ll. 4-5 (explaining that movement of the plug in Fig. 2 "compensate[s]. . . for the positive fluid displacement introduced by the insertion of the male Luer").)  Moreover, the use of the term "compensate" in the patent is consistent with its plain and ordinary meaning.  (*See* McBride Decl. Ex. 8, *Webster's II* at 290 ("To make up for or offset . . . ."); Ex. 9, *Am. Heritage* at 385 ("To offset; counterbalance . . .").)

Braun's proposed construction, which is inconsistent with its prior construction and the construction applied by its expert,[2] attempts to improperly limit the term to situations where the displacement of air due to movement of the plug "is equal to" the displacement due to movement of the actuator into or out of the valve.  Yet, the prosecution history clearly defines "compensating" as including situations where the displacements are "equal to" each other **and** situations where valve achieves "self-flushing" and the air displacement is larger.  (*See* Ex. 15, Prosecution History at CFCCA00000350-51 (summarizing Examiner Interview and explaining that "[a] second way to apply the patent's compensation technique is referred to as 'flushing' or 'self-flushing'").  Notably, Braun is no longer asserting indefiniteness with regard to this term, further highlighting Braun's inconsistent positions.

---

[2] (*See* McBride Decl. Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 62.)

10

**B.     Most Significant Disputed Claim Constructions of the '816 Patent**

**1.      "off-axis"**

| CareFusion's Proposed Construction | Braun's Prior Construction | Braun's Current Construction |
|---|---|---|
| "off-axis" means "off the **axis of the housing**." | "valve element being displaced off-axis" means "the **axis of the valve element** in the second position does not coincide with the axis of the valve element in the first position." <br><br> "compressing the valve element off-axis" means "the **axis of the valve element** in the open position does not coincide with the axis of the valve element in the closed position." <br><br> (*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 35.) | "such that the second axis tilts so as to not coincide with the **axis of the housing** when the valve element is in the second position." |

The phrases "the valve element being displaced off-axis from the first position" and "compressing the valve element off-axis to open the fluid channel" are recited in claims 6 and 20, respectively.  CareFusion's construction is straightforward and supported by the claims themselves.  Claim 6 recites the axis as "the axis of the housing."  (*See* Ex. 2, '816 patent at claim 6.)  This is the clear antecedent of the term "off-axis" in the same claim.  (*See* Ex. 11, Prosecution History at CFCCA000000216-17 (simultaneously adding "a housing having an axis" and "the valve element . . . being displaced off-axis").)  Braun's addition of "second axis," which does not appear in either claim 6 or 20, is improper.  (*Compare* Ex. 2 at claims 6 and 20 *with* claim 7.)

CareFusion's construction is also supported by other intrinsic evidence.  For example, Figures 3, 5 and 11 each show the valve element in the activated state being displaced off the axis of the housing.  (*See* Ex. 2, '816 patent.)  CareFusion's construction is also consistent with the dictionary definitions of "displace," which is used in claim 6.  (*See* Ex. 8, *Webster's II* at 388 ("To change the place or position of . . ."); Ex. 9, *Am. Heritage* at 537 ("To move or shift from the usual place or position . . . .").)

Braun's construction is a significant change in position from its previous constructions,[3] and would, for the first time, add a "tilting" limitation that is nowhere required by the language of the claims. *See Johnson*, 175 F.3d at 989 ("[M]odifiers will not be added to broad terms standing alone."). Braun's addition of the term "tilting" is inconsistent with the specification and the ordinary meaning of the term "displace," neither of which require tilting. (*See, e.g.,* Ex. 2 at Fig. 10; *id.* at col. 3 ll. 55-59 ("FIG. 10 is an axial cross-section view of an additional embodiment of the connector including a housing and a valve element with a shaft in a normal state, the shaft being displaced <u>off-axis</u> with respect to the housing of the connector.").) Braun's addition of a "tilting" requirement is also inconsistent with the intrinsic evidence regarding "compressing" the valve element along its axis. (*See id.* at col. 6 ll. 10-16.) Elsewhere in the specification, the proximal surface of the valve element is taught to change angles (which Braun may argue is akin to a "tilting" of the proximal surface). Yet, when such a limitation was desired, claim language describing the angles of the proximal surface was used. (Ex. 2 at col. 5, ll. 40-45; *id.* at claim 21.)

**2.    "second axis"**

| CareFusion's Proposed Construction | Braun's Prior Construction | Braun's Current Construction |
|---|---|---|
| "the center line of the valve element." | "a line passing through the center of the proximal surface of the valve element perpendicular to the plane of the proximal surface of the valve element extending infinitely in both directions."<br><br>(*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 34.) | "the line extending through and perpendicular to the proximal surface of the housing that tilts so as to not coincide with the axis of the housing when moved into the second position." |

---

[3] (*See* McBride Decl. Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 35.)

1    The terms "second axis" and "second axis of the valve element" are recited in

2    independent claims 1 and 8, and dependent claim 7.  CareFusion's construction is

3    consistent with the specification, which demonstrates what is meant by the valve

4    element having a "second axis."  (*See, e.g.,* Ex. 2, '816 patent at Figs. 2-3, 5 and 11; *id.*

5    at col. 2, ll. 35-47 ("The connector includes a housing having an axis extending

6    between a proximal end and a distal end . . . A valve element is disposed in the housing

7    and has a second axis . . . ."); *see also* col. 5, ll. 12-25 ("a valve element 90 . . . has a

8    generally elongate configuration . . . includes a plug 92 which is disposed along an axis

9    94 and a shaft 96 extending from the plug 92 along an axis 98"); col. 6, ll. 1-16 ("the

10   valve element 90 is compressed along its axis 94, 98").)  CareFusion's construction is

11   also consistent with dictionary definitions of "axis."  (*See* Ex. 8, *Webster's II* at 142-

12   143 ("**2.** . . . **a.** An unlimited line, half-line, or line segment serving to orient a space or

13   a geometric object, esp. a line about which the object is symmetric. . . . **3.** A center line

14   to which parts of a structure or body may be referred. . . ."); Ex. 9, *Am. Heritage* at 130

15   ("**2.** . . . **a.** An unlimited line, half-line, or line segment serving to orient a space or a

16   geometric object, especially a line about which the object is symmetric. . . . **3.** A center

17   line to which parts of a structure or body may be referred. . . .").)

18        Braun's current construction again contradicts Braun's prior construction.[4]

19   More importantly, Braun's construction would improperly replace the claim language

20   "valve element" with "proximal surface of the [valve element]" and then select a single

21   point on that surface to define an "axis" for the entire 3-dimensional object.  The

22   specification does not support such a construction.  (Ex. 2 at col. 2, ll. 9-21 ("A valve

23   element, typically including a plug and a shaft . . ."); *id.* at col. 6, ll. 1-16 ("the valve

24   element 90 is compressed along its axis 94, 98. . . . This may occur due to a shortening

25

26

27   _____

28   [4] (*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12
     Report at 34.)

13

of the element along its axial length").)[5]  Braun's proposed construction (which does not comport with any ordinary meaning of the term "axis") apparently relies on a definition of axis as "a straight line about which a body . . . rotates."  (*See* Ex. 10, Joint Statement at 30.)  Yet this is wholly inconsistent with the use of the term in the '816 patent, which nowhere describes the valve element as rotating, such as about an axis of rotation.

Braun's proposed construction is also contradicted by its assertion, in connection with validity, that U.S. Patent No. 4,723,694 ("Sykes") meets the claim elements.  Under Braun's construction, the "axis" of the valve element in Sykes would never be "displaced from" the axis of the housing because the proximal surface of the valve element (to the extent that it has one) is never "tilted."  (*See, e.g.,* Ex. 18 at Fig. 3.)  Yet Braun, itself, asserts that the Sykes reference meets these claim limitations.  (Ex. 12, Layton 4/30/12 Report at 28; Ex. 6, Braun's Invalidity Contentions at 19.)[6]

---

[5] Braun's construction ignores that it is the valve element that has the axis and not the proximal surface of the valve element.  In contrast, where a claim limitation was drafted to describe the orientation of the proximal surface, claim language describing the angles of the proximal surface was used.  (Ex. 2 at col. 5, ll. 40-45; *id.* at claim 21.)

[6] The discussion of Sykes in the prosecution history of the '816 patent also demonstrates that CareFusion's proposed construction of "second axis" is consistent with its use in the '816 patent.  (*See* Ex. 11, Prosecution History at CFCCA00000184, Office Action (9/19/96) ("Sykes teaches a valve element which has a second axis which is displaced from the axis of the housing when the valve element is compressed . . ."); *id.* at CFCCA00000203, Applicant 1/17/97 Response ("Claim 8 recites that the valve element has a second axis which is aligned with the first axis of the housing in the first position.  This language clearly distinguishes the Sykes valve element where the shaft is bowed in both the first and second positions").)

### 3.    "fluid flow path is displaced from the axis of the housing"

| CareFusion's Proposed Construction | Braun's Prior Construction | Braun's Current Construction |
|---|---|---|
| Plain and ordinary meaning.  No construction is required.<br><br>Alternative to Braun's proposed construction (to the extent the Court finds that a construction is required): "for at least some of the length of the fluid flow path, the center of the fluid flow path no longer coincides with the axis of the housing." | "for most of the length of the fluid flow path, the center of the fluid flow path does not coincide with the axis of the housing."<br><br>(*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 40.) | "**for most of the length of the fluid flow path**, the fluid flow is not centered around the axis of the housing." |

The phrase "fluid flow path is displaced from the axis of the housing," which appears in Claim 15, should be given its plain and ordinary meaning. *See Finjan.*, 626 F.3d at 1206-07; *see also Cisco*, 2011 WL 5913972, at *5. This term is a straightforward phrase that can be understood by a person of ordinary skill in the art and/or a layman alike and needs no further construction.  This is fully supported by the intrinsic evidence.  For example, during prosecution of the '816 patent, the claim limitation was described as distinguishing the Paradis patent, which "remains concentric with the axis of the housing in the second position." (*See* Ex. 11, Prosecution History at CFCCA00000221; *see also* Ex. 13, U.S. Pat. No. 5,509,433 ("Paradis") at fig. 4C.)  In response, the Examiner withdrew the rejection over the Paradis patent and issued the claims.  (*See* Ex. 11 at CFCCA00000231.)   Moreover, the dictionary definitions of "displace" are straightforward, indicating that it has a clear and plain ordinary meaning.  (*See* Ex. 8, *Webster's II* at 388 ("To change the place or position of . . . ."); Ex. 9, *Am. Heritage* 537 ("To move or shift from the usual place or position . . . .").)

1    Braun's proposed construction, in addition to being inconsistent with its prior

2  construction,[7] is merely an attempt to improperly add the limitation "for most of the

3  length" to the claim.  *See Johnson*, 175 F.3d at 989 ("[M]odifiers will not be added to

4  broad terms standing alone."); *see also Thorner*, 699 F.3d at 1366.  Neither the

5  intrinsic evidence nor the ordinary meaning of the claim language warrant this

6  modification.

7         **4.    "fluid channel being non-concentric with the axis of the
                  housing"**

8

| CareFusion's Proposed Construction | Braun's Prior Construction | Braun's Current Construction |
|---|---|---|
| Plain and ordinary meaning.  No construction is required.  Alternative to Braun's proposed construction (to the extent the Court finds that a construction is required): "for at least some of the length of the fluid flow channel, the center of the fluid flow channel does not coincide with the axis of the housing." | "for most of the length of the fluid flow path, the center of the fluid flow path does not coincide with the axis of the housing."  (*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 41.) | Plain and ordinary meaning, i.e., that **"for most of the length of the fluid channel**, the fluid flow is not centered around the axis of the housing." |

16    The parties agree (with one exception) that the phrase "fluid channel being non-

17  concentric with the axis of the housing," which appears in Claim 6, should be given its

18  plain and ordinary meaning.  This term is a straightforward phrase that needs no

19  further construction.  This is fully supported by the intrinsic evidence.  For example,

20  during prosecution of the '816 patent, the claim limitation was described as

21  distinguishing the Paradis patent, which "remains concentric with the axis of the

22  housing in the second position." (*See* Ex. 11, Prosecution History at CFCCA00000221;

23  *see also* Ex. 13, U.S. Pat. No. 5,509,433 ("Paradis") at fig. 4C.)  In response, the

24  Examiner withdrew the rejection over the Paradis patent and issued the claims.  (*See*

25  Ex. 11 at CFCCA00000231.)  Moreover, the dictionary definitions of the term

26  _____

27  [7] (*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12
    Report at 40; Ex. 14, Braun's Motion for Partial Summary Judgment of Invalidity of

28  '816 Patent at 12-13.)

"concentric" are straightforward, indicating that it has clear and plain ordinary meanings.  (*See* Ex. 8, *Webster's II* at 293 ("**con·cen·tric** . . . *n.* . . . Having a common center. . . .."); Ex. 9, *Am. Heritage* at 390 (same).)

Braun's proposed "plain and ordinary meaning," in addition to being inconsistent with its prior construction,[8] is an attempt to improperly add the language "for most of the length" to the claim.  *See Johnson*, 175 F.3d at 989 ("[M]odifiers will not be added to broad terms standing alone."); *see also Thorner*, 699 F.3d at 1366.  Neither the intrinsic evidence nor the ordinary meaning of non-concentric warrant this modification.

### 5.    "open the channel substantially along only one side of the housing"

| CareFusion's Proposed Construction | Braun's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  No construction is required. | This claim is indefinite under 35 U.S.C. § 112 and thus incapable of construction.<br><br>If the Court finds this claim definite, B. Braun suggests "a **significant majority of the volume of the channel** is on one side of the housing when the valve is open." |

The phrase "open the channel substantially along only one side of the housing," which appears in Claim 17, should be given its plain and ordinary meaning.  *See Finjan*, 626 F.3d at 1206-07; *see also Cisco*, 2011 WL 5913972, at *5.  This term is a straightforward phrase that can be understood by a person of ordinary skill in the art and/or a layman alike and needs no further construction.  This is fully supported by, among other things, the dictionary definitions of the term "side."  (*See* Ex. 8, *Webster's II* at 1081("The part within an object or area to the left or right of the observer or of its vertical axis . . . ."); Ex. 9, *Am. Heritage* at 1676 ("The part within an object or area to the left or right of the observer or of its vertical axis . . . .").)

---

[8] (*See* Ex. 4, Braun's response to Interrogatory No. 3 at 18; Ex. 3, Kytomaa 5/21/12 Report at 41.)

1   Braun's construction is merely an attempt to improperly add the limitation "for a

2   significant majority" to the claim.  *See Johnson*, 175 F.3d at 989 ("[M]odifiers will not

3   be added to broad terms standing alone.").  Moreover, Braun's construction reads out

4   the claim term "open."  Instead of construing how the channel is "open[ed]," Braun

5   attempts to limit the entire "volume of the channel."  Moreover, Braun's assertion that

6   this element is indefinite is without merit.  (*See* Ex. 17, U.S. Patent No. 5,618,268 at

7   claim 7 (". . . substantially planar . . .").)

8   **C.    Other Disputed Claim Constructions of the '418 Patent**

9       **1.    "moved . . . into a portion of the air chamber"**

| CareFusion's Proposed Construction | Braun's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  No construction is required. | Plain and ordinary meaning, i.e., "moved to the inside of." |

14   This term appears in independent claims 17, 27, and 68.  Prior to June 12, Braun

15   never proposed that this term required construction.  Now that Braun has identified this

16   term, the parties agree (again with one exception) that the phrase "moved . . . into a

17   portion of the air chamber" should be given its plain and ordinary meaning.   No

18   further construction is required.  Braun's elaborate "explanation" of the plain and

19   ordinary meaning is contradicted by the intrinsic evidence, which does not require

20   movement "to the inside of" and instead addresses the resultant displacement of air due

21   to movement of the plug.  (*See* Ex. 1, '418 patent fig. 7 and 8; *id.* at col. 3, ll. 10-15

22   ("[T]he biased member has a generally cylindrical shape and according to one aspect

23   of the present invention, includes a hollow, collapsible skirt which surrounds and

24   defines the air chamber. Movement of the actuator into the internal chamber collapses

25   the collapsible skirt and **moves the biased member into a portion of the air**

26   **chamber**.") (emphasis added); *id.* at col. 6, ll. 44-47 ("The plug cylindrical distal

27   portion 70 is moved into the vented air chamber 43 to thereby effectively transfer the

28   fluid displacement introduced by the actuator 90 into the ambient atmosphere.").  The

18

use of the term "into" in the '418 patent is consistent with its plain and ordinary meaning. (*See* Ex. 8, *Webster's II* at 639 ("5. To a point within the limits of a period of time or extent of space . . . 7. In the direction of: TOWARD . . . ."); Ex. 9, *Am. Heritage* at 945 ("3. To a point within the limits of a period of time or extent of space . . . 4. In the direction of; toward . . .").)

### 2. "generally planar"

| CareFusion's Proposed Construction | Braun's Position |
| --- | --- |
| Plain and ordinary meaning. No construction is required. | This claim is indefinite under 35 U.S.C. § 112 and thus incapable of construction.<br><br>Braun proposes no alternate construction. |

The phrase "generally planar" should be given its plain and ordinary meaning. *See Finjan*, 626 F.3d at 1206-07; *see also Cisco*, 2011 WL 5913972, at *5. "Generally planar" is a straightforward phrase that can be understood by a person of ordinary skill in the art and/or a layman alike and needs no further construction. This is fully supported by the intrinsic evidence including the claims, specification, and prosecution history. (*See, e.g.*, Ex. 1, '418 patent at figs. 1-3; *id.* at patent reexamination certificate at claims 5, 17, 32, 38-40, 48; Ex. 15, '418 prosecution history at CFCCA00000460, 462, and 465.)

Braun's position that the phrase "generally planar" is indefinite lacks merit. The phrase clearly has an ordinary meaning and is neither "insolubly ambiguous" nor "not amenable to construction." *See Young*, 492 F.3d at 1346; *see also Exxon*, 265 F.3d at 1375. For example, courts have routinely found that phrases such as "generally flat" and similar terms either require no construction, or are amenable to construction. *See Douglas Dynamics, LLC v. Buys Prods. Co.*, 2010 WL 744253, at *19 (W.D. Wisc. Mar. 2, 2010) ("generally parallel to the longitudinal axis" did "not need construction because its plain and ordinary meaning is easily discernible"); *see also Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1310-11 (Fed. Cir. 2003) (holding that "[b]ecause the claim language itself expressly ties the adverb

'generally' to the adjective 'parallel,' the ordinary meaning of the phrase 'generally parallel' envisions some amount of deviation from exactly parallel"); *cf. Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1207-09 (Fed. Cir. 2001) (construing "generally flat" to mean "substantially" or "mostly" horizontal).  As a further example, the dictionary definitions of the terms "generally" and "planar" are straightforward, indicating that they have clear and plain ordinary meanings.  (*See, e.g.*, Ex. 8, *Webster's II* at 542, 898 ("**gen·er·al·ly** . . . *adv.* . . . **1.** For the most part . . ."; "**plan·ar** . . . *adj.* . . . **2.** Flat . . .").)  Braun's own patents further confirm that the claim term "generally planar" is not indefinite.  (*See* Ex. 16, U.S. Patent No. 5,437,655 col. 2 ll. 59-60 (claiming "a cap having a **generally planar** circular base") (emphasis added).)  Since Braun proposes no alternate construction, the plain an ordinary meaning should apply.

### 3.    "non-perpendicular relationship" and "slanted relationship"

| Claim Language | CareFusion's Proposed Construction | Braun's Proposed Construction |
|---|---|---|
| "with a generally planar surface that is disposed in a **nonperpendicular relationship** with the axis when the biased member is in the second position."<br><br>"the generally planar surface being oriented in a **slanted relationship** with respect to an end surface of the actuator" | Plain and ordinary meaning. No construction is required. | Plain and ordinary meaning, i.e., with respect to "non-perpendicular relationship," that "the relationship between the entire proximal surface and the axis is not perpendicular," and with respect to "slanted relationship," that "the entire proximal surface is at an angle relative to the actuator surface" |

There should be no dispute here because both parties agree that the plain and ordinary meaning of the phrases "non-perpendicular relationship" and "slanted relationship" should apply.  However, after conceding that the plain and ordinary meaning applies, Braun adds a limitation (found nowhere in the claims, specification, or prosecution history) that these relationships should apply to the "entire proximal surface."  This is improper.  *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,

469 F.3d 1005, 1014 (Fed. Cir. 2006) (rejecting accused infringer's argument that the limitation "head is pressed against the hollow spherically-shaped portion" required the head had to be pressed against the entire spherically-shaped portion).

"Non-perpendicular relationship" and "slanted relationship" are straightforward phrases that can be understood by a person of ordinary skill in the art and/or a layman alike and need no further construction.  This is fully supported by the intrinsic evidence including the claims, specification, and prosecution history which make no mention of the relationship applying to the "entire proximal surface."  (*See, e.g.*, Ex. 1, '418 Claims 17 and 32; Ex. 15, Prosecution History at CFCCA00000454-55, 465, and 514.)

**D.     Other Disputed Claim Constructions of the '816 Patent**

**1.      "shaft"**

| CareFusion's Proposed Construction | Braun's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  No construction is required. | "a compressible section of the valve element supporting the plug and extending along the length of the valve" |

Prior to June 12, Braun never proposed any construction of "shaft," or that "shaft" even required construction.  That is because the parties previously agreed that prior art Mathieu patent does <u>not</u> include a "shaft."   (*See* Ex. 14, Doc. 115-1 (Stricken), Braun's Mem. ISO Mot. SJ Invalidity of '816 patent at 22 (Braun:  "The embodiment illustrated in Mathieu does not have a plug or a shaft as required by these elements [of claim 15].");  *contra* McBride Decl. ¶ 2 (explaining that Braun's counsel raised "shaft" as a claim construction term on June 12 due to its alleged presence in Mathieu).)  The term "shaft," which appears in claim 15, should be given its plain and ordinary meaning.  *See Finjan*, 626 F.3d at 1206-07; *see also Cisco*, 2011 WL 5913972, at *5.  "Shaft" is a straightforward term that can be understood by a person of ordinary skill in the art and/or a layman alike and needs no further construction.

The intrinsic evidence supports CareFusion's position.  (*See, e.g.*, Ex. 2, '816 patent at Abstract ("A valve element disposed in the channel includes a plug and

21

1  elastomeric shaft which biases the plug into sealing engagement with the housing"); *id.*

2  at Figs. 2-13 (illustrating a valve element comprising a plug and a shaft); *id.* at col. 10

3  ll. 25-43 ("The connector 10 can be constructed of only three elements including the

4  cap 32 and base 30 which form the housing 34 and the elastomeric valve element

5  90").) The shaft is discussed in the specification as, for example, "sculpted," having "a

6  generally hollow structure," having portions with a "rounded configuration" that "seats

7  . . . within the arcuate spherical recess . . . in the base," or being "formed integrally

8  with the plug." (*See, e.g.,* Ex. 2 at col.3 l. 66 - col.4, l. 2; *id.* at col.9, ll. 29-34; *id.* at

9  col. 7, ll. 10-21, *id.* at claim 23.)

10     Braun's proposed construction also attempts to improperly add limitations to the

11  term "shaft" and mischaracterize its properties. *See DePuy*, 469 F.3d at 1014. For

12  example, there is no support in the intrinsic evidence that the shaft "extend[s] along the

13  length of the valve." In fact, Braun's proposed construction contradicted by the

14  intrinsic evidence. (*See, e.g.*, Ex. 2 at Fig. 2; *id.* at col. 5 ll. 12-24.)

15         **E.    The Preambles of the '816 Patent Only Are Properly Limiting**

16     In general, the preamble of a patent claim does not limit claim scope and does

17  not require construction. The preamble is not limiting where, for example, "a patentee

18  defines a structurally complete invention in the claim body and uses the preamble only

19  to state <u>a purpose or intended use</u> for the invention." *Catalina Mktg. Int'l, Inc. v.*

20  *Coolsavings.com, Inc*., 289 F.3d 801, 808 (Fed. Cir. 2002) (emphasis added); *see*

21  *Bristol-Myers Squibb Co. v. Ben Venue Labs, Inc.,* 246 F.2d 1368, 1374-75 (Fed. Cir.

22  2001) (preamble phrase "for reducing hematologic toxicity" non-limiting where it

23  merely expressed the purpose of the claimed method.); *IMS Tech., Inc. v. Haas*

24  *Automation, Inc*., 206 F.3d 1422, 1434 (Fed. Cir. 2000) (preamble "control apparatus"

25  non-limiting where it merely named the structurally complete invention).

26     The exception is rare. A preamble limits a claim only if it "recites essential

27  structure or steps, or if it is necessary to give life, meaning, and vitality to the claim."

28  *Catalina*, 289 F.3d at 808. This exception includes fact-specific situations such as: (1)

Jepson claiming (a special type of claiming not used in the '816 or '418 patents), (2)
"dependence on a particular disputed preamble phrase for antecedent basis" (present
here for only the '816 patent), (3) clear reliance on the preamble during prosecution to
distinguish the prior art (present here for only the '816 patent), (4) reciting additional
structure or steps that the specification underscored as important, and (5) preamble
language that is essential to understand limitations or terms in the claim body (not
present here). *Catalina Mktg.*, 289 F.3d at 808-09.

### 1.      The '816 patent preambles are limiting

The preambles of the '816 patent are limiting.  This is because terms within the
body of the '816 patent claims rely on the preamble language for antecedent basis.

| | Independent Claim 1 | Independent Claim 6 | Independent Claim 8 | Independent Claim 17 |
|---|---|---|---|---|
| Preamble language | "A connector adapted to facilitate bi-directional flow between **a male Luer** fitting and **a receptacle tube**" | "A connector adapted to facilitate bi-directional flow between a **male Luer** fitting and an **intravenous tube**" | "A connector adapted to facilitate access into a receptacle" | "A method for operating a connector disposed between a male fitting and **a receptacle**" |
| Language in body of claim | ". . . from **the male Luer** fitting to **the receptacle tube** . . ." | ". . . insertion of **the male Luer** fitting . . . from **the male Luer fitting** to the **intravenous tube** . . ." | ". . . the housing having its distal end attached to **the receptacle** . . ." | ". . . coupling **the receptacle** to the distal end . . ." |

### a.      Antecedent basis

"Antecedent basis" in patent law refers to the preceding reference to an item
referenced for a second time in the claim.  In the first instance, the indefinite article "a"
is typically used, and in subsequent references, a definite article such as "the" or "said"
is used.  Independent claims 1, 6, 8 and 17 rely on the preamble for antecedent basis
for their reference to the phrases "male Luer," "intravenous tube," and "receptacle."
(*See* Ex. 2, '816 patent at claim 1 (col. 10 ll. 65-67, col. 11 ll. 13-14), claim 6 (col. 11
ll. 33-35, col. 11 l. 43, col. 11 ll. 48-49), claim 8 (col. 11 ll. 63-67), claim 17 (col. 13 ll.

23

7-8, col. 13 l. 16).)  *See, e.g.*, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005) ("Because these limitations of claim 1 of the '960 patent derive their antecedent basis from the claim 1 preamble and . . . [the preamble] provide[s] context for the claim limitations, the use of these limitations in the preamble limits the claim."); *Rapoport v. Dement*, 254 F.3d 1053, 1059 (Fed. Cir. 2001) ("[W]ithout treating the phrase 'treatment of sleep apneas' as a claim limitation, the phrase 'to a patient in need of such treatment' would not have a proper antecedent basis."); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1306 (Fed. Cir. 1999) (finding antecedent basis in the preamble for the claim terms "generated shapes" and "spots.").

This is confirmed in the prosecution history of the '816 patent, in which the Patent Office stated, and the Applicants agreed, that the preamble provided the antecedent basis for the Luer, tube and receptacle language recited in the claims.  (Ex. 11, 9/19/96 Office Action at CFCCA00000182; *id.*, 2/5/97 Amendment at CFCCA00000200; *id.*, 6/11/97 Office Action at CFCCA00000207 ("these items are only mentioned in the preamble of the claims"); *id.*, 8/20/97 Amendment at CFCCA00000219-20 ("proper antecedent basis is provided . . . in the preamble").)

### b.    Arguments during prosecution

Another reason exists for concluding that the preamble phrase "[a] connector adapted to facilitate bi-directional flow" is limiting in at least independent claims 6 and 15 (and their asserted dependent claims).  During prosecution of the application that issued as the '816 patent, claims 6 and 15 (at the time claims 6 and 16) were rejected over the Paradis reference.  (*Id.*, 6/11/97 Office Action at CFCCA00000208-09.)  In response, the Applicants argued that the Paradise reference did not preclude patentability of application claims 6 and 16 because the aspect of Paradis being relied on by the Patent Office was "not applicable to bi-directional connectors."  (*Id.*, 9/20/97 Amendment at CFCCA00000220-221; *id.* ("The device disclosed in Paradis . . . is not usable as a connector capable of bi-directional flow.").)  In response, the Patent Office allowed the claims to issue as claims 6 and 15.  Thus, "[a] connector adapted to

24

1   facilitate bi-directional flow" is limiting for at least '816 patent claims 6 and 15.  *See*

2   *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)

3   ("[C]lear reliance on the preamble during prosecution to distinguish the claimed

4   invention from the prior art transforms the preamble into a claim limitation because

5   such reliance indicates use of the preamble to define, in part, the claimed invention.").

### 1.    The '418 patent preambles are non-limiting

7        In contrast to the '816 patent, the preambles of the asserted claims of the '418

8   patent are non-limiting.  None of the exceptions to the general rule apply.  Even

9   Braun's expert previously agreed that the '418 preambles are non-limiting.  (*See* Ex.

10  12, Layton 4/30/12 Report at 41.)  Braun apparently changed its position on June 13

11  (the day of the Joint Claim Construction Statement), simply to argue that the claims are

12  allegedly invalid.  This is not a proper use of claim construction and is, in fact, not a

13  claim "construction" at all.  *See Baxa v. McGaw Inc.*, 981 F. Supp. 1348, 1359 (D.

14  Colo. 1997) ("[C]onsidering the preambles in each claim to be limitations could result

15  in the invalidity of each as indefinite . . . .  Therefore, I conclude that the preambles

16  contain no limitations."), *aff'd sub nom. Baxa Corp. v. Excelsior Med. Corp.*, 185 F.3d

17  883 (Fed. Cir. 1999) (unpublished).[9]

18  **V.    CONCLUSION**

19       CareFusion's proposed constructions are well supported by the law and the

20  intrinsic evidence, particularly the claim language itself.  In contrast, Braun merely

21  attempts to re-write and alter the nature of the claims.  CareFusion respectfully submits

22  that the Court should adopt CareFusion's proposed constructions.

23

24  ───────────────────

25  [9] Moreover, such an argument would contravene the limits of Braun's Invalidity
    Contentions served in this case, in which Braun stated that it would take the position
26  that the preamble phrases "minimum fluid displacement" or "self-flushing connector"
    are indefinite only "[t]o the extent Plaintiff argues that the[se] . . . preamble terms . . .
27  are claim limitations."  (Ex. 6, Braun Invalidity Contentions at 35.)  As CareFusion
    takes the position that the preambles of the '418 patent are <u>non-limiting</u>; thus, Braun
28  has not preserved its right to even make its current indefiniteness argument.

1

Respectfully Submitted,

2

3    Dated:  June 18, 2012

/s/ Scott P. McBride
Timothy J. Malloy (*pro hac vice*)
David D. Headrick (*pro hac vice*)
Scott P. McBride (*pro hac vice*)
Wilhelm L. Rao (*pro hac vice*)
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Telephone:      312.775.8000
Facsimile:      312.775.8100

Mark P. Wine (SBN 189897)
Thomas J. Gray (SBN 191411)
Don E. Daybell (SBN 210961)
Orrick, Herrington & Sutcliffe LLP
2050 Main Street, Suite 1100
Irvine, California 92614-8255
Telephone:      949.567.6700
Facsimile:      949.567.6710

*Attorneys for Plaintiff and Counter-defendant CareFusion 303, Inc.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 11-cv-01264 PA (ANx)
CAREFUSION'S OPENING BRIEF ON CLAIM CONSTRUCTION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2012 copies of the foregoing were filed electronically through the Court's ECF System, with notice of case activity automatically generated and sent electronically to all parties.

Dated: June 18, 2012                         **McANDREWS, HELD & MALLOY, LTD**.

/s/ Scott P. McBride
Scott P. McBride